**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JONATHON G. FOSTER,

     *Plaintiff*,

*v.*                                CASE NO. 11-CV-15644

COMMISSIONER OF             DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, for disability insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits. This matter is currently before this Court on cross-motions for summary judgment. (Docs. 13, 18, 19.)

Plaintiff was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 11 at 21, 25.) Plaintiff's employment history includes work as a plumber since 1994. (Tr. at 121.) Plaintiff filed the instant claims on May 20, 2008, alleging that he became unable to work on December 1, 2006. (Tr. at 102, 105.) The claims were denied at the initial administrative stages. (Tr. at 53, 54.) In denying Plaintiff's claims, the Commissioner considered "H/O [history of] chest test insertion for pneumothorax" as possible basis for disability. (*Id.*) On September 20, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Melvyn B. Kalt, who considered the application for benefits *de novo*. (Tr. at 10-15; 21-52.) In a decision dated December 8, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 15.) Plaintiff requested a review of this unfavorable decision on December 14, 2010. (Tr. at 92-101.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 27, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On December 27, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at \*4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2006. (Tr. at 11.) At step two, the ALJ found that Plaintiff's history of pneumothorax was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found

no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 14.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual, age 18 to 44, and subsequently changed age category to a younger individual age 45 to 49. (*Id.*) At step five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 12-14.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 15.)

### E.      Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that in 1981 Plaintiff suffered a pneumothorax which required chest tube insertion four times after he tried to get high by sniffing and siphoning gasoline. (Tr. at 181, 206-19.) By 1990, x-rays of Plaintiff's lungs showed some "scarring at the right base," but were otherwise "normal" with "no evidence of active pulmonary disease." (Tr. at 236.)

In 2002, Plaintiff was involved in a car accident when a rear axle came off his car while traveling on the freeway. (Tr. at 317.) Plaintiff was taken to the hospital, tests were run, he was diagnosed with contusions to the chest and abdomen and neck strain, given prescription Motrin, and released to go home. (Tr. at 317-18.)

On August 5, 2008, Plaintiff was examined by Bina Shaw, M.D., of Disability Determination Services ("DDS"). (Tr. at 181-83.) Dr. Shaw noted that Plaintiff "drinks daily, about one pint a day" and "is not able to quit drinking." (Tr. at 181.) Dr. Shaw also noted that Plaintiff "smokes one pack of cigarettes per day" and "has a marijuana habit." (*Id.*) Dr. Shaw diagnosed "[c]hronic alcoholism without serious complications yet" and "[e]xertional dyspnea; status post chest tube insertion with right sided chest wall pain." (Tr. at 183.)

On September 23, 2008, Plaintiff sought treatment in a clinic for chest pain and he was advised to go to an emergency room for "further evaluation" but chose not to do so. (Tr. at 188.)

On May 15, 2010, Plaintiff sought treatment at Henry Ford Hospital in Detroit, Michigan, for chest pain. (Tr. at 189-98.) Plaintiff underwent an echocardiogram. (Tr. at 190.) Plaintiff was "diagnosed with musculoskeletal chest pain." (Tr. at 198, 327-28, 362-84.) Plaintiff was given Motrin, indicated that his "pain [was] much improved since motrin, [so the doctors] sen[t] [him] home." (Tr. at 326.)

Plaintiff returned to the hospital one week later and again on June 15, 2010, with chest pain. (Tr. at 345.) It was noted that the "etiology" of his chest pain was "unclear" because his chest exams were "normal." (*Id.*)

On July 14, 2010, a CT scan of the chest revealed "2 pleural based nodules in the right lower lobe measuring up to 5 mm." (Tr. at 203, 347.) It was recommended that a follow-up chest CT be performed, and "[i]f there is no change, no further follow up is necessary." (*Id.*)

On August 18, 2010, Plaintiff sought treatment for chest pain in the pulmonary clinic of Henry Ford Hospital. (Tr. at 200-01, 351-52.) Chest x-rays revealed "[n]o acute process," that the lungs were "clear," and the "heart and mediastinum [were] unremarkable." (Tr. at 332.) There were "no other pulmonary parenchymal abnormalities" so the patient was "re-assured" and he was given "smoking cessation counseling[.]" (Tr. at 201, 352.)

In his daily activity report, Plaintiff stated that he had "been having an increasing shortness of breath" when he participates in the "normal/regular activities of [his] profession . . ." and that the "mild reoccurring pain is a constant reminder of [his] condition . . . ." (Tr. at 129.) Plaintiff also stated that his daily routine is:

> I wake up, wash up or bathe, make breakfast for myself, watch tv or use family
> computer to check e-mails, have lunch, watch an afternoon TV show, walk around

> to the neighborhood park, socialize for a while, walk home, eat dinner, watch TV, go to sleep.

(*Id.*) Plaintiff indicated that he has no problem with personal care, prepares his own meals, does "all normal household chores, as long as it does not require overhead lifting or an exhaustive effort." (Tr. at 13-31.) Plaintiff also indicated that he goes out "almost everyday[,]" is able to walk, drive a car, ride in a car, use public transportation, shop for groceries and clothes in stores, by phone, by mail and by computer and that he spends about "an hour per store." (Tr. at 132.) Plaintiff stated he can handle his finances but doesn't "have enough money to pay [his] bills." (Tr. at 132-33.)  Plaintiff stated that his hobbies are reading and watching television; he also plays cards and socializes "once or twice per week[.]" (Tr. at 133.)

At the administrative hearing in May 2010, Plaintiff was informed of his right to counsel and decided to take some time to try to secure representation so the hearing was adjourned until September 2010. (Tr. at 44-52.) As of September 20, 2010, Plaintiff indicated that he was unable to find someone to represent him but that he wished to proceed without counsel. (Tr. at 21-22.) When the ALJ described the job of the person at the information desk at the agency office and asked Plaintiff if he could do that job, Plaintiff responded, "[t]hat sounds like a job that I could probably do . . . ." (Tr. at 28.) After the ALJ described the job of a ticket taker, Plaintiff responded, "If I could sit and [stand] yeah, probably could." (Tr. at 33.) Plaintiff testified that he thought he could lift "[o]n a repeated basis, about 10 pounds" and that he could "[p]robably stand for an hour or two maybe" and then he would "have to sit down for about an hour or two." (Tr. at 36.) The ALJ asked Plaintiff if the following description was a "fair description of what your restrictions are[:]"

> Stand for an hour, sit for an hour, no more than 10 pounds, no cold or extreme temperatures, hot or cold, and no repeated use of your upper body in movements like that.

9

(Tr at 37.) Plaintiff responded that the description was "correct" and that "it sounds like a fair - - yes, it does. Sounds like a good description." (*Id.*)

The ALJ asked the vocational expert ("VE"), "[i]f the claimant's testimony today is fully credited, would there be any work that he could perform?" (Tr. at 37.) The VE responded that "[h]e would then be limited to unskilled sedentary work, including things such as counter clerk, cashier.  There would be some packaging and sorting jobs. In terms of numbers, counter clerk 2,000, cashier 6,000, packager, 3,000, and sorter 2,000." (Tr. at 38.) When the ALJ reminded the VE of the restriction to no repeated use of the upper body, the VE stated that such a restriction would "eliminate the packaging and sorting jobs, leaving the counter clerk and cashier jobs." (*Id.*)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 12-14.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "ALJ abused his discretion, by not full[y] considering the medical records and information contained therein" and that he "put too much credibility into the occupational specialist's considerations, ignoring the depth of the medical condition limitations of the plaintiff." (Doc. 13 at 2-3.)

I suggest that there is no evidence of a disabling condition, let alone any "depth" of medical evidence. Although Plaintiff had a history of pneumothorax, there is no evidence that there is any present disabling condition as a result of the pneumothorax or for any other reason. As early as 1990, x-rays of Plaintiff's lungs showed some "scarring at the right base" but were otherwise "normal" with "no evidence of active pulmonary disease." (Tr. at 236.) Although he complained of chest pain, the etiology was unknown or it was summarized as "musculoskeletal chest pain" and his x-rays and CT scans were normal and unremarkable. (Tr. at 198, 327-28, 332, 345, 362-84.) Plaintiff's treatment consisted of, at most, a prescription for Motrin. (Tr. at 326.) This modest

11

treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007).

As to the overall RFC analysis, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he could "probably do" the job mentioned by the ALJ and the statements that he has no problem with personal care, prepares his own meals, does "all normal household chores, as long as it does not require overhead lifting or an exhaustive effort[,]" he goes out "almost everyday[,]" is able to walk, drive a car, ride in a car, use public transportation, shop for groceries and clothes in stores, by phone, by mail and by computer and that he spends about "an hour per store[,]" can handle his finances, reads, watches television, and also plays cards and socializes "once or twice per week[.]" (Tr. at 28, 131-33.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d

590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties

are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837;

*Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue

contained within the objections.

_s/_ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER

Dated: October 9, 2012                           United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, served upon counsel of record via the Court's ECF System, and served on the following non-ECF participant via the United States Postal Service: Jonathan G. Foster, 18527 Cardoni, Detroit, MI 48203.

Date:  October 9, 2012                    By____s/Patricia T. Morris_____
                                                       Law Clerk to Magistrate Judge Binder

13